**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-25-0000067
25-NOV-2025
08:28 AM
Dkt. 89 SO**

NO. CAAP-25-0000067

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF V.R.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 22-00190)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, and Wadsworth and Guidry, JJ.)

Mother-Appellant (**Mother**) appeals from the Order Terminating Parental Rights (**TPR Order**) entered on January 22, 2025, by the Family Court of the First Circuit (**Family Court**).[1] The TPR Order, among other things, terminated Mother's parental rights to her minor child, V.R. (**Child**). Mother also challenges certain conclusions of law (**COLs**) in the Family Court's July 31, 2025 Findings of Fact & Conclusions of Law (**FOFs/COLs**).

Mother contends that: (1) the Family Court erred in finding "clear and convincing evidence that []Mother is not presently, nor in the reasonably foreseeable future[ will become,] willing and able to provide the Child with a safe family home, even with the assistance of a service plan," as stated in COLs 22 to 25; and (2) "there was not an actual permanent plan to be found in the best interest of the [C]hild, as erroneously found [in] COL[s] 25 and 26."

---

[1] The Honorable Kyle T. Dowd presided.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Mother's contentions as follows, and affirm.

(1) Mother challenges COLs 22 to 25, in which the Family Court determined that Petitioner-Appellee Department of Human Services (**DHS**) established by clear and convincing evidence that (a) Mother "[is] not presently willing and able to provide the Child with a safe family home, even with the assistance of a service plan[,]" and (b) "[i]t is not reasonably foreseeable" that Mother "will become willing and able to provide the Child with a safe family home . . . within a reasonable period of time. Mother contends that, because there was testimony at trial that she had completed certain services recommended by DHS, "there cannot logically have been a determination by clear and convincing evidence that the statutory requirements of HRS § 587A-33(a) ha[ve] been met."

HRS § 587A-33(a) (2018), part of the Child Protective Act (**CPA**), governs the termination of parental rights. It provides, in pertinent part:

> § 587A-33 **Termination of parental rights hearing.**
> (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:
>
> > (1)   A child's parent whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan;
> >
> > (2)   It is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care[.]

Trial on the motion to terminate parental rights concluded on January 15, 2025, approximately twenty-three months after the Child was placed in DHS custody. "The two-year time limit [in HRS § 587A-33(a)(2)] is the maximum a parent is allowed

2

within which to demonstrate that the parent can provide a safe home, not the minimum." In re GH, Nos. 29187, 29188, 2009 WL 1426786, at *2 (Haw. App. May 22, 2009) (SDO). The Hawaiʻi Supreme Court has defined a safe family home as "a family home in which the child's parents or legal custodian can adequately provide for the child's physical and psychological health and welfare and thereby adequately protect the child from harm, be it actual, imminent, or threatened." In re Doe, 95 Hawaiʻi 183, 194, 20 P.3d 616, 627 (2001).

We conclude that clear and convincing evidence supports the Family Court's "safe family home" determinations, as reflected in COLs 22-25. Specifically, the Family Court found in FOFs 52-83, based on the trial testimony of DHS social worker Damon Boren (**Boren**) and the totality of the relevant, reliable and credible evidence in the record, the following:

(A) The court found that Mother's safety concerns "included substance abuse, severe mental illness, lack of appropriate parenting skills and knowledge, and domestic violence[,]" and to address these concerns, "DHS service plans required Mother to complete . . . a psychological evaluation, individual therapy, medication management, a substance abuse assessment, drug screening, and hands-on parenting education." FOFs 52-54. Mother does not dispute these FOFs or otherwise challenge the supporting evidence. See In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002) (unchallenged findings of fact are binding on appeal).

(B) The court found that "Mother's unaddressed substance abuse poses a high risk of harm to the Child"; "Mother tested positive for alcohol in December 2024," during the ongoing TPR proceedings; "Mother acknowledged the use of illicit substances and alcohol both during and after her pregnancies with the Child and her younger sibling"; Mother minimized her substance abuse both during and after pregnancy; and "Mother failed to complete her random drug monitoring program and substance abuse counseling." FOFs 55-60. Mother does not dispute these FOFs or otherwise challenge the supporting

3

evidence.  See In re Doe, 99 Hawaiʻi at 538, 57 P.3d at 463.

Mother contends that at trial, Boren testified that DHS had not been able to determine whether Mother had a substance abuse problem.  But Boren qualified this statement by reference to Mother's concerning behaviors and inconsistent progress with substance abuse services.  The Family Court relied on the record as a whole in determining FOFs 55-60, which included an October 25, 2024 Supplemental Safe Family Home Report that Mother had not attended hair follicle tests in September and October of 2024.  This explains Boren's testimony at trial, without negating the clear and convincing evidence that supports FOFs 55-60.

(C)  The court found that "Mother has a history of chronic mental illness and is currently diagnosed with schizophrenia[,] which requires daily oral and monthly injectable psychotropic medications to minimize psychotic symptoms"; her schizophrenia symptoms include audio and visual hallucinations, delusions and disorganized thoughts, including her belief that she has only two children, despite having had five children before moving to Hawaiʻi; a psychological evaluation "recommended individual therapy with a doctoral-level therapist[,]" as well as other treatments; and "Mother does not believe she has schizophrenia[.]"  FOFs 61-65.  Mother does not dispute these FOFs or otherwise challenge the supporting evidence.  See In re Doe, 99 Hawaiʻi at 538, 57 P.3d at 463.

Mother contends that at trial, Boren gave "uncertain testimony" as to whether Mother had participated in counseling/therapy services.  In fact, when asked  whether Mother had participated in the recommended therapy, Boren stated, "[N]o, not to my knowledge."

(D) The court found that "Mother's lack of parenting skills and knowledge poses a risk of harm to the Child," as exemplified by her inconsistency in attending visits with the Child, her inability to engage with the Child and respond to her needs, and other inappropriate behaviors during visits with the Child; Mother is unable to maintain a safe environment for the Child; "Mother has attended visits with alcohol in her possession

and possibly while under the influence of alcohol"; and even though Mother completed her parenting education class, she "failed to complete hands-on parenting" and was "unable to demonstrate the appropriate parenting skills necessary to maintain a safe home . . . ." FOFs 66-78. Mother does not dispute these FOFs or otherwise challenge the supporting evidence. See In re Doe, 99 Hawaiʻi at 538, 57 P.3d at 463.

Mother argues that she engaged in parenting services. However, Boren testified at trial that Mother completed a parenting class but not hands-on training, as reflected in FOF 76.

(E) The court found that "Mother minimizes the [unaddressed] domestic violence dynamics in her relationship with Father," which "pose a risk of harm to the Child"; Mother did not complete domestic violence classes; and she "remains in a relationship with Father[,] who has not completed court-ordered anger management classes." FOFs 79-83. Mother does not dispute these FOFs or otherwise challenge the supporting evidence. See In re Doe, 99 Hawaiʻi at 538, 57 P.3d at 463.

Mother contends "there was also testimony" that Mother completed a domestic violence assessment and did not need treatment. However, Boren testified at trial that DHS recommended that Mother complete domestic violence services, and it was Mother who told the service provider "there was no need for . . . domestic violence treatment." She does not dispute the clear and convincing evidence that she did not complete the recommended domestic violence classes.

On this record, we conclude that the Family Court did not clearly err in determining that Mother is not presently willing and able to provide the Child with a safe family home, even with the assistance of a service plan, and it is not reasonably foreseeable that she will become willing and able to do so within a reasonable period of time.

(2) Mother next contends there was not clear and convincing evidence that the Permanent Plan, dated July 16, 2024, was in the best interest of the Child, as found in COLs 25 and

26.    Mother argues that the Permanent Plan was "not a realistic permanent plan," and could not be found to be in the best interest of the Child, because it did not name a proposed placement (*i.e.*, a proposed adoptive parent).[2/]  Mother also notes that after trial, DHS raised the issue of relocating the Child out of state, leading Mother to describe the Permanent Plan as "provisional."

HRS § 587A-32(a)(1) (2018) provides that the permanent plan must state "<u>whether</u> the permanency goal for the child will be achieved through adoption, legal guardianship, or permanent custody[.]"  (Emphasis added.)  Discretion to determine an appropriate custodian is vested in DHS upon termination of parental rights.  <u>In re Doe</u>, 100 Hawaiʻi 335, 346, 60 P.3d 285, 296 (2002).  This court has consistently ruled that HRS Chapter 587A does not require a permanent plan to identify a proposed placement.  <u>See, e.g.</u>, <u>In re S.L.</u>, No. CAAP-24-0000344, 2025 WL 101699, at *3 (Haw. App. Jan. 15, 2025) (SDO) ("Though . . . a pre-termination permanent plan *may* identify a proposed permanent placement as part of its permanency goal, it is not required to do so, as the final determination of permanent placement is not required to be decided until after termination."); <u>In re K.K.</u>, No. CAAP-23-0000058, 2024 WL 490880, at *3 n.4 (Haw. App. Feb. 8, 2024) (SDO) ("[S]pecification of adoptive parents is not required in a proposed permanent plan . . . ." (quoting <u>In re S.P.</u>, No. CAAP-13-0003106, 2014 WL 1658601, at *1 (App. Apr. 25, 2014))).  We apply the same rule here.

Additionally, Mother does not explain how the possibility of relocating the Child conflicts with the stated goal of adoption or otherwise affects the Family Court's best interest determination.  Her argument is therefore without merit.

On this record, we conclude that the Family Court did not clearly err in determining that the Permanent Plan is in the Child's best interest.

---

[2/]    The Permanent Plan approved by the Family Court and attached to the TPR Order states a permanency goal that the Child be placed for adoption; it does not identify a proposed adoptive parent.

**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

For the reasons discussed above, the Order Terminating Parental Rights entered on January 22, 2025, by the Family Court of the First Circuit is affirmed.

DATED:  Honolulu, Hawaiʻi, November 25, 2025.

On the briefs:

Tae Chin Kim
for Mother-Appellant.

Kellie M. Kersten and
Julio C. Herrera,
Deputy Attorneys General,
for Petitioner-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge